# Walker v. Walker, Appellant.

*Trusts—Real property—Resulting trusts—Parol evidence—Sufficiency—Case for jury.*

1. Evidence in support of a trust must be clear, precise, convincing and satisfactory to the conscience of a chancellor.

2. In an action of ejectment to recover land alleged to be held by defendant in trust for plaintiff, there was evidence that plaintiff had paid a part of the purchase-price and that a mortgage negoti-

ated by her husband had been placed on the property out of which the balance of the purchase-price had been paid, and that the legal title to the property had been taken by one of defendants, and had been conveyed to a corporation, the other defendant, with notice of the facts; and there was further evidence that defendants had made improvements upon the property for which they had been reimbursed by plaintiff. Defendants offered evidence that they had purchased the property for their own use and had paid the purchase-price. The trial judge charged the jury that if they found clear, precise and indubitable evidence that the transaction took place as contended by plaintiff, they might find a verdict in her favor. *Held,* a verdict for the plaintiff should be sustained.

*Practice, Supreme Court—Appeals—Assignments of error—Refusal of new trial—Evidence—Specific objection—Waiver of other reasons.*

3. The refusal of a new trial is not a proper subject for an assignment of error, unless the record discloses abuse of discretion in refusing the motion.

4. Where a specific objection has been made to the admission of evidence, all reasons not enumerated in the objection are waived, and on appeal the appellant will be limited to the ground of objection specified in the court below.

5. Where irrelevant matter has been improperly admitted, but at the time it was offered an objection was made not on the ground that the evidence was irrelevant, but on the ground that it was offered to prove by parol what could only be proved by writings, which objection was without merit, the action of the trial judge in subsequently striking the evidence from the record and in directing the jury to disregard it, sufficiently protected the party against whom the evidence was offered, and he was in no position thereafter to complain, when he took no exception to the remarks of the trial judge and asked for no further instructions upon the subject, especially where the evidence so admitted was merely incidentally corroborative of other evidence in the case.

Argued April 24, 1916. Appeal, No. 293, Jan. T., 1915, by defendants, from judgment of C. P. Erie Co., Sept. T., 1913, No. 217, on verdict for plaintiff, in case of May L. Walker v. T. W. Walker and Walker Grape Products Company. Before BROWN, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Ejectment to recover land in Erie County.   Before
WALLING, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for the land in suit and judgment
thereon.   Defendants appealed.

*Errors assigned* were in refusing to direct a verdict for
defendant, rulings on evidence and instructions to the
jury.

*John B. Brooks,* with him *Charles H. English,* for appellant.—The evidence was insufficient to warrant a verdict for plaintiff: Todd v. Campbell, et al., 32 Pa. 250;
Elbert v. O'Neil, 102 Pa. 302; Reno v. Moss, 120 Pa. 49;
Wylie, et al., v. Mansley, 132 Pa. 65.

*W. S. Carroll,* with him *J. M. Sherwin,* for appellee.—
The evidence was clear that the property was being
bought by and for the plaintiff and a resulting trust was
therefore created which may be established by parol:
Nixon's App., 63 Pa. 279; Lynch v. Cox, 23 Pa. 265;
Galbraith v. Galbraith, 190 Pa. 225.

OPINION BY MR. JUSTICE MOSCHZISKER, May 23, 1916:
A clear understanding of this case, and the manner in
which it was tried, can best be had from an examination
of the elaborate charge of the trial judge; in presenting
to the jury the issues involved, he said: "May L. Walker
is the plaintiff; T. W. Walker and the Walker Grape
Products Company are the defendants.   The suit is an
action in ejectment to recover the possession of a certain piece of land.......Prior to June, 1911, this property belonged to the Streuber heirs; at that time......
there were negotiations......looking to its purchase
......for the purpose of establishing a grape juice factory......and the property was purchased in the name
of T. W. Walker, for $20,000......, ($2,000 was paid
down); a mortgage was negotiated from J. F. Downing

......for $25,000, and out of the proceeds......T. W. Walker paid the balance of the purchase-money. The plaintiff, May L. Walker, contends that the property was really bought for her and placed in the name of T. W. Walker, to be held in trust for her. The deed and contract showing a sale to T. W. Walker, the burden is upon her to make out a case of trust; it must be shown by clear, precise and indubitable evidence.......She assumes that burden, or at least offers testimony to show that she was......and is the beneficial owner of the property. Now, to do that, you have the testimony first of Mr. Adelbert Moot, an attorney residing at Buffalo, who was acting at that time as attorney for Mrs. Walker. He says that these parties, Mrs. Walker, her husband, F. J. Walker, and T. W. Walker, were all in his office on or about the first of June, and they talked over the purchase of this Streuber property; that they talked over the project of establishing a grape juice plant upon it, and also said the property would be a good buy, whether they used it for that purpose or not; ......that it was agreed the property would be bought, and that Mr. Moot would advance some money to May L. Walker to assist her in the purchase. He says that ......he said to her, 'If you don't wish to take this in your own name you can take it in the name of your brother, Mr. T. W. Walker'; that T. W. Walker consented to the arrangement, and Mr. Moot then drew a check in favor of Mrs. Walker for $1,000, to make the initial payment, and later, at the end of thirty days, he sent Mrs. Walker another check of $1,000. Mrs. Walker testifies substantially to the same thing, and F. J. Walker, her husband, testifies substantially to the same transaction. They all testify that she paid the first $2,000 on this property, and that, in effect, it was agreed that T. W. Walker would take it for her ......; to corroborate that you have these two checks offered in evidence, and the evidence indicates that they passed through T. W. Walker's hands and were paid to apply on the purchase of this property. You have also

the testimony of F. J. Walker and his son, W. H. Walker, who is also the son of the plaintiff, to the effect that at a later time, or on later occasions, T. W. Walker admitted to them he held the property in trust for Mrs. Walker and would turn it over to her; but they say he said he would do it when he got around to it......There is some evidence tending to show that Mrs. Walker paid the expenses of the trip to Buffalo (to purchase the property), and paid some expense of having the property surveyed, and other expenses.......But T. W. Walker says he never was in Mr. Moot's office with Mrs. Walker; he says that his brother and his nephew, W. H. Walker, wanted to go in the grape juice business,......and wanted him to finance the project for them; that,...... at their solicitation, he went to Buffalo to see about getting Mr. Moot to arrange for financing the project; he says he was in Mr. Moot's office and that, as he came down the stairs, he met Mrs. Walker......, but he never saw her in Mr. Moot's office; that he never agreed to take the property......in trust, and never did so.   He says he took the property in his own right, having an agreement later, or perhaps at that time, which was afterwards reduced to writing, to turn this property over to F. J. Walker and others, I believe members of his family, on being reimbursed what T. W. Walker had put in, with the interest.   T. W. Walker says he never knew May L. Walker in the transaction at all; he says that about the time the first transaction was closed, F. J. Walker handed him this check from Mr. Moot for the $1,000, stating that it was to help the project along and to be used to get the business started, but that there was nothing said that it was to make her an equitable owner of the property; he says the second check was received under similar circumstances, simply as advances to help the business along, a business which he says was intended primarily to help F. J. Walker and W. H. Walker; that is, the husband and son of Mrs. Walker."

After outlining the evidence, as just stated, the charge

proceeds thus: "So far as the deed is concerned and the articles of agreement, they both corroborate T. W. Walker, because they both show an absolute ownership; . there is nothing in either indicating that he held the property in trust. If T. W. Walker is right, if you find the facts to be as he states them, then you should find a verdict, unhesitatingly, in favor of the defendants, because on the case as stated by him there would be no resulting trust......Of course the law is that, where property is purchased by one party, who pays for it, and the deed is taken in the name of another, there is a resulting trust; but here the amount actually advanced by Mrs. Walker was only ten per cent. of the purchase-money, and if advanced or understood to be advanced to T. W. Walker simply to help along the general business of the grape juice project, that would not give her an equitable ownership in this property. So whether there is a trust or not depends on what took place......If you find it is shown by clear, precise and indubitable evidence that at the time this property was bought there was this agreement that T. W. Walker was to take title to the property for her, and that she paid what purchase-money was paid on it at that time, and that through a mortgage negotiated by her husband upon this property the balance was secured, then, in my opinion, there would be a resulting trust in her favor."

The trial judge next called the jurors' attention to "some circumstances tending to discredit" the testimony relied upon by the plaintiff; after which he said: "Mrs. Walker's claim, if she has any, is second to the Downing mortgage; that will have to be paid in any event, because it is a lien on the property, and it was understood at the time of this purchase that there was to be a mortgage placed upon it to Mr. Downing, there is no question about that." Then he referred to the fact that the property had been conveyed, subject to this $25,000 mortgage, by Mr. T. W. Walker to the corporation defendant named with him, and added, "The deed to the corpora-

tion would not convey any higher right than T. W. Walker held, if he held in trust, the same trust would hold good, that is, the corporation is not a purchaser for value without notice, so the fact that the corporation bought this property of T. W. Walker, or secured a conveyance from him for it, does not change the legal status of the case, as it would had Mr. Walker conveyed the property to an innocent purchaser"; after which, these instructions were given: "If you find there was a trust, that is, if you find for the plaintiff on that branch of the case, the next question is: 'Did Mrs. Walker ever have possession of this property?' for, being an oral, or parol agreement, the law, as conceded by counsel on both sides, is to the effect that Mrs. Walker, before she can recover in ejectment, must have had at one time possession of this property." The trial judge then reviewed the evidence, pro and con, on the subject of the plaintiff's alleged possession following the purchase of the property, after which he told the jury that, even if they should find that Mrs. Walker had taken possession as equitable owner, and T. W. Walker held the property in trust for her, yet "before she can recover possession of the property she must reimburse him for all the money and expenses that he put in the improvement of this estate," adding, "Now has she done so? Unless she has, if there was a balance due him and if the corporation......paid out moneys for the same purpose, to improve the real estate, the corporation would stand in the same shoes as T. W. Walker."

On the questions of the expenditures made upon the real estate, and their payment, the charge is full and adequate; referring thereto, the trial judge, inter alia, said: "Now have the defendants been reimbursed for the expenditures made on this real estate? There is no evidence tending to show that Mrs. Walker was ever concerned in the grape juice business, so if they invested money in the business, not as a part of the real estate, she is not bound for those investments; but for what-

ever they put upon the real estate in good faith to make
it into a grape juice plant, they are entitled to be reim-
bursed......Machinery that is brought there and put
upon the premises......is what is known in law as fix-
tures, and passes with the real estate.    If she gets a ver-
dict, she is entitled to the whole plant just as it is......,
so, before she can recover, she must reimburse them for
the improvements made upon the real estate."

Then, considering the other side, the charge proceeds:
"Mrs. Walker contends, and the evidence for the plaintiff
tends to show, that she expended some money there in
clearing up and in improving the buildings"; after
which the trial judge makes some fair comments upon
and references to the testimony, and states a correct
enumeration of items with which the respective parties
should be charged and credited in stating an account be-
tween them; following this the jury was told: "Taking
what you find T. W. Walker paid out in improving the
property, and what was paid out by the Grape Products
Company along the same line......, and all that they
have expended on the faith of the real estate, not in the
business, then taking what they received out of it, includ-
ing what T. W. Walker got out of it, how does the ac-
count stand?    Is there a balance due T. W. Walker?
......If there is, you should find a verdict for the de-
fendants; because, before she (the plaintiff) can recover
possession of this property, she must reimburse the de-
fendants for what they have honestly expended on the
faith of the transaction, so far as the expenditures upon
the real estate are concerned......If you find for the
defendants on that ground, that ends this case."    Again
returning to the plaintiff's side of the case the trial judge
continued: "It is the theory of the plaintiff that there is
a large amount of mesne profits due to Mrs. Walker, and
those are claimed......; the expenses of keeping in re-
pair, and taxes and insurance, and all those things,
should be deducted and only the net amount of rent
should be allowed as mesne profits......If you find for

her—that is, find that the property was held in trust for her, that at one time she had possession of it, and that she is not owing the defendants anything growing out of this real estate—......then, if there is a balance due her, you certify that."

The jury rendered a verdict for the plaintiff, but did not award her any damages; the defendants have appealed. They complain because (1) the trial judge refused to give binding instructions in their favor, (2) the court below refused them judgment non obstante veredicto, (3) their motion for a new trial was not granted, (4) of alleged error in a part of the charge submitting to the jury the issues as to "whether T. W. Walker had been reimbursed for all the moneys paid out on account of this trust," (5) "the court erred in allowing the plaintiff's counsel to call the attention of the jury to a certain letter, Exhibit 'Z'......, it not having been proved nor offered in evidence." So far as the first four assignments are concerned, we need only state that, in the performance of our duties as a reviewing tribunal, we have read the evidence and are not convinced the issues involved could properly have been withdrawn from the jury, or that any material error was committed in the manner in which they were submitted. It is quite true, "no rule of law is better settled by the decisions of this court than that requiring the evidence in support of a trust to be clear, precise, convincing and satisfactory to the conscience of a chancellor" (Braun v. First German Evangelical Lutheran Church, 198 Pa. 152, 157); but we are not convinced the evidence at bar did not measure up to this standard. That the proofs depended upon fully satisfied the conscience of the learned judge who tried the case, is shown by the following excerpts from the opinion of the court below: "The verdict for the plaintiff, under the charge of the court, implies a finding beyond a reasonable doubt that the title to the land in question was taken in the name of the defendant, T. W. Walker, in trust for the plaintiff, that the first

$2,000.00 paid as part consideration therefor was furnished by the plaintiff, that the balance of the consideration was paid directly or indirectly by said T. W. Walker out of the proceeds of the Downing loan, that such loan was negotiated by the plaintiff's husband, ......and that the defendants have been reimbursed for all the moneys expended in the improvement of said real estate......The original consideration paid for the land in question was $20,000.00, but the Downing mortgage thereon was for $25,000.00, all of which, with half year's accumulated interest, remained unpaid at the time of the trial. The bond given by T. W. Walker, accompanying said mortgage, is not a general obligation, but limited to the said real estate and the personal property that might be found thereon......The jury declined to allow plaintiff any mesne profits and, since the verdict in her favor is subject to the payment of the Downing mortgage, we are not clear that it does injustice to the defendants, if we accept the finding of the jury as establishing the fact that a trust relation actually existed between the parties. ......In view of the evidence......, we are not prepared to say either that judgment should be entered..... n. o. v.......or a new trial granted......The prothonotary is directed to enter judgment on the verdict."

Both sides tried this case on the theory that it was essential to show possession taken by the plaintiff immediately after the purchase of the real estate in controversy; therefore, it is not necessary to enter upon a discussion as to the applicability of that doctrine to the facts at bar, although, under the law as laid down in Galbraith v. Galbraith, 190 Pa. 225, 228; Casciola v. Donatelli, 218 Pa. 624, 630; Ott v. Duffy, 246 Pa. 211, 216, it is not at all clear that any such burden rested upon the present plaintiff; but, however that may be, we cannot say the court below erred in ruling that the evidence was sufficient to show the plaintiff did, in fact, take such possession.

We recently ruled that the refusal of a new trial is not

a proper subject for an assignment of error, as it is within the reasonable discretion of a trial court to grant or refuse such a motion (Weitz v. Banfield, 226 Pa. 241, 244) ; and, as already indicated, this record discloses no abuse of discretion in refusing the motion in the present case.

There is no merit in the last assignment of error. The record shows this entry: "Plaintiff's counsel offers in evidence the various exhibits from 'A' to 'Z'......Defendant objects......for the reason that they are evidently offered in support of an attempt to establish by parol a trust......Objection overruled, exhibits admitted and exception sealed for defendant." That in a case of this character a resulting trust may be proved by parol evidence, is too well established to require the citation of authorities, and, apparently, the appellants do not now question the correctness of the original ruling on that score, but contend that subsequent error was committed in connection with Exhibit "Z." It is apparent from the record that the letter in question was, in fact, admitted in evidence; but it appears that, after the jury had retired, counsel for the defendant moved the exhibit be "stricken from the record and the jury instructed to disregard the same as not competent evidence." Whereupon, the jurors were recalled; the trial judge stated to them that the exhibit had been "inadvertently admitted," and struck it from the record. In this connection he said: "In our opinion that letter is not evidence against T. W. Walker; it has not been shown that T. W. Walker ever saw it; it seems to have got in the record with a lot of other letters......; we instruct you to disregard the letter entirely, as if there had not been anything said about it." It will be observed that when the letter was originally offered there was no objection on any ground other than the general one already referred to; hence, the rule applies that when one specifically states his objection to the admission of evidence, all reasons not enumerated are waived, and on appeal he

will be limited to the ground specified in the court below: Messmore v. Morrison, 172 Pa. 300; Benner v. Fire Association, 229 Pa. 75. It will further be observed that, when the letter was stricken out, counsel for the defendants took no exception to the remarks of the trial judge and asked for no further instructions upon the subject then before the court. Under these circumstances, he is not now in a position to complain: Merritt v. Poli, 236 Pa. 170; Mastel v. Walker, 246 Pa. 65. Finally, since the exhibit in question, at the most, was no more than incidentally corroborative of other evidence in the case, we are not convinced the defendant suffered any material harm therefrom.

The assignments of error are all overruled, and the judgment is affirmed.